**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 180018-U

Order filed July 14, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0018 Circuit No. 17-CF-398 |
| DA MARR NOEL BUSH, | ) ) ) | Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Carter and Schmidt concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   The State proved the defendant guilty of armed robbery, unlawful possession of a weapon by a felon, and aggravated battery beyond a reasonable doubt.

¶ 2     The defendant, Da Marr Noel Bush, appeals his convictions for armed robbery, unlawful possession of a weapon by a felon, and aggravated battery. The defendant argues the evidence was insufficient to prove him guilty of these offenses.

¶ 3                                I. BACKGROUND

¶ 4   The State charged the defendant by information with armed robbery (720 ILCS 5/18-2(a)(2) (West 2016)), unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)), aggravated battery (*id.* § 12-3.05(f)(1)), and mob action (*id.* § 25-1(b)(3)). The information alleged that the defendant (1) "while armed with a firearm being a handgun did take property being United States currency from *** Jason Klinedinst by *** threatening the use of force," (2) "knowingly had in his possession a firearm being a handgun and the defendant has been previously convicted of a felony," (3) "without legal justification did knowingly batter Kayla Floyd by the use of a deadly weapon being a handgun in that he struck *** Floyd in the head with said gun," and (4) "without authority of law and while acting together with at least one other person, knowingly by the use of violence or force disturbed the public peace and caused injury to the person of *** Floyd."

¶ 5   During a bench trial, Floyd testified that she and her boyfriend, Klinedinst, were walking to a Circle K gas station after 10 p.m. when four men, including the defendant, approached them. Floyd testified that the defendant called out to her, saying, "Hey, baby. Hey, baby." Floyd replied, "The only person that calls me 'baby' is [Klinedinst]." The defendant responded, "Well, this white bitch needs to learn a lesson" and struck Floyd in the back of the head with a black object that felt like it was made of metal. Floyd testified she fell to her knees after the defendant struck her in the head, and the other three men began to hit her all over her body.

¶ 6   On cross-examination, Floyd testified that the streetlights allowed her to see faces clearly, even though it was dark. She said she clearly saw the object in the defendant's hand and described it as a "black gun." She testified it was not silver. She stated that the object with which the defendant struck her "felt like a gun," and that she knew the object was a gun when she saw the defendant then hold it to Klinedinst's head.

2

¶ 7    Klinedinst testified that after the defendant struck Floyd, the defendant approached him "with the gun, cocked it, put the gun to [his] head, and said, 'I'll cap your bitch ass.' " Klinedinst believed the defendant meant "shoot" when he said "cap." Klinedinst testified that the object was approximately one foot away from his head. The defendant pointed the object at Klinedinst's head immediately after striking Floyd; the defendant did not pull the object out of his pocket after striking Floyd. Floyd testified that she saw the defendant hold the object in front of Klinedinst's face and demand that Klinedinst "give him the money." Klinedinst handed over approximately $4800 to the defendant, and the defendant and the other men left.

¶ 8    A week after the incident, Klinedinst and Floyd viewed separate photographic lineups and identified the defendant as the man who struck Floyd and took Klinedinst's money. Klinedinst also informed the police that he knew the defendant through a mutual acquaintance.

¶ 9    The defendant, testifying on his own behalf, admitted he had a prior felony conviction. The defendant said that he was at a bar near the Circle K gas station on the evening in question. The defendant saw Klinedinst and Floyd outside the bar. The defendant testified that Klinedinst pulled Floyd into a nearby alley, such that the defendant believed Klinedinst was going to beat Floyd. The defendant heard Floyd call for help from the alley and intervened to allow Floyd to escape. The defendant denied taking any money from Klinedinst.

¶ 10    The circuit court found the defendant guilty of all four counts, concluding Klinedinst and Floyd's testimony was credible. The court sentenced the defendant to 26 years' imprisonment for aggravated battery, 7 years' imprisonment for unlawful possession of a weapon by a felon, 5 years' imprisonment for armed robbery, and 2 years' imprisonment for mob action. The defendant appeals.

¶ 11                                  II. ANALYSIS

¶ 12 The defendant argues the State failed to prove beyond a reasonable doubt that the object in his hand during the incident was a firearm, and therefore failed to satisfy the requisite elements for armed robbery, unlawful possession of a weapon by a felon, and aggravated battery.

¶ 13 "A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985). It is not the reviewing court's role to retry the defendant; instead, we must ask whether, " 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact must "resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts." *People v. Gray*, 2017 IL 120958, ¶ 35. A reviewing court will not replace the trier of fact's judgment with its own regarding the weight of the evidence or witnesses' credibility. *Id.* The circuit court is best positioned to make witness credibility determinations because it can observe witnesses' conduct and demeanor. *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). "A conviction may be based upon circumstantial evidence ***." *People v. Huff*, 29 Ill. 2d 315, 320 (1963).

¶ 14 A. Armed Robbery

¶ 15 A person commits armed robbery when he "knowingly takes property *** by threatening the imminent use of force" and is "armed with a firearm." 720 ILCS 5/18-1(a), 18-2(a)(2) (West 2016). A firearm is "any device *** designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas." 430 ILCS 65/1.1 (West 2016); see 720 ILCS 5/2-7.5 (West 2016). "The State does not have to prove the gun is a firearm [within the meaning of the statutory definition] by direct or physical evidence; unequivocal testimony of a witness

4

that the defendant held a gun is circumstantial evidence sufficient to establish that a defendant was armed during a robbery." *People v. Clark*, 2015 IL App (3d) 140036, ¶ 20 (citing *People v. Wright*, 2015 IL App (1st) 123496, ¶ 74).

¶ 16 The defendant argues the evidence presented was insufficient to prove he possessed a firearm during the incident beyond a reasonable doubt because neither Klinedinst nor Floyd sufficiently described the object in question. However, the record shows that both Klinedinst and Floyd testified unequivocally that the object in the defendant's hand during the incident was a gun. The court reasonably inferred from Klinedinst and Floyd's testimony—which included the assertion that the defendant "cocked" the object and pointed it at Klinedinst's head, as well as a description of the object's color and texture—that the object in the defendant's hand during the incident was a firearm. Floyd testified that the object was black and felt like it was made of metal. She reiterated on cross-examination that the object "felt like a gun." Klinedinst testified that the defendant, immediately after striking Floyd with the object, pointed it at him approximately one foot away from his head. The defendant "cocked" the object and said, "I'll cap your bitch ass." Klinedinst believed the word "cap" meant "shoot." These facts, viewed in the light most favorable to the State, proved the elements of armed robbery beyond a reasonable doubt.

¶ 17 B. Unlawful Possession of a Weapon by a Felon

¶ 18 A person commits unlawful possession of a weapon by a felon if he knowingly possesses "any firearm *** if the person has been convicted of a felony." *Id.* § 24-1.1(a). The defendant argues the State may not use circumstantial evidence to create an inference that the object in the defendant's possession during the incident was a firearm to satisfy the charge of unlawful

5

possession of a weapon by a felon, relying on *People v. McLaurin*, 2018 IL App (1st) 170258, *rev'd*, 2020 IL 124563, to support his argument.

¶ 19       The Illinois Supreme Court recently reversed the appellate court's *McLaurin* ruling, holding that the circumstantial evidence presented was sufficient to support an unlawful possession of a weapon by a felon conviction. *People v. McLaurin*, 2020 IL 124563, ¶¶ 32-38. The supreme court observed that the *McLaurin* eyewitness "testified 'clearly and plainly, and without impeachment that she saw a firearm, and that the defendant was the person holding that firearm' " and that the eyewitness saw the defendant clearly because it was broad daylight. *Id.* ¶ 36.

¶ 20       Like the eyewitness in *McLaurin*, Klinedinst and Floyd testified clearly and plainly, and without impeachment that the object in the defendant's hand was a gun: Floyd said the object was a "black gun," it "felt like a gun," and she saw it was a gun when it was pointed at Klinedinst's head; Klinedinst said the defendant approached him "with the gun, cocked it, [and] put the gun to [his] head." While the incident occurred after 10 p.m., the lighting from streetlamps allowed both Klinedinst and Floyd to see the defendant clearly enough during the incident to identify him in separate photographic lineups a week later. Viewing this evidence in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that the defendant possessed a firearm.

¶ 21                           C. Aggravated Battery

¶ 22       "A person commits aggravated battery when, in committing a battery, he *** [u]ses a deadly weapon other than by discharge of a firearm." 720 ILCS 5/12-3.05(f)(1) (West 2016). The defendant argues the State failed to prove the elements of the aggravated battery charge beyond a reasonable doubt. For the reasons stated above, a rational trier of fact could have found

that the evidence, viewed in the light most favorable to the State, proved beyond a reasonable doubt that the object in the defendant's hand was a firearm. *Supra* ¶ 16.

¶ 23                                        III. CONCLUSION

¶ 24          The judgment of the circuit court of Peoria County is affirmed.

¶ 25          Affirmed.